UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY WOLSCHLAGER,

                Plaintiff,                Case No. 2:19-cv-13008
                                        District Judge Nancy G. Edmunds
v.                                Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST
FOR SENTENCE SIX REMAND (ECF No. 15), GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 18) and AFFIRM THE
COMMISSIONER'S DECISION</u>**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment and request for Sentence Six remand (ECF No. 15), **GRANT**

Defendant's motion for summary judgment (ECF No. 18), and **AFFIRM** the

Commissioner's decision.

**II.    REPORT**

      Plaintiff, Terry Wolschlager, brings this action under 42 U.S.C. § 405(g) and

42 U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of

Social Security (Commissioner) denying his application for Disability Insurance

(DI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (ECF

No. 15), the Commissioner's cross-motion for summary judgment (ECF No. 18),

and the administrative record (ECF No. 11).

### A.    Background and Administrative History

Plaintiff alleges his disability began on February 2, 2017, at the age of 45.

(R. at 73, 176.)[1]  He filed an application for Disability Insurance Benefits (DIB) on

February 2, 2017.  (R. at 72.)  In his disability report, he lists degenerating disc

disease, bulging disc, herniated disc, 80 % blind in left eye, crushed foot, and

arthritis in back as limiting his ability to work.  (R. at 190.)  His application was

denied on July 13, 2017.  (R. at 84-91.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (R. at

83.)  On June 25, 2018, ALJ Roy E. LaRoche, Jr. held a hearing, at which Plaintiff

and a vocational expert (VE), Harris Senoan, testified.  (R. at 38-71.)  On October

18, 2018, ALJ LaRoche issued an opinion, which determined that Plaintiff was not

disabled within the meaning of the Social Security Act.  (R. at 23-37.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at

140-142.)  However, on August 30, 2019, the Appeals Council denied Plaintiff's

---

[1] This citation is to Plaintiff's Disability Determination and Disability Report
because the Application itself has not been included in the transcript.  There is no
dispute regarding this date.

request for review.  (R. at 1-7.)  Thus, ALJ LaRoche's decision became the

Commissioner's final decision.

Plaintiff timely commenced the instant action on October 14, 2019.  (ECF

No. 1.)

**B.  Plaintiff's Medical History**

The administrative record contains approximately 230 pages of medical

records, which were available to the ALJ at the time of his October 18, 2018

decision.  (R. at 239-469 [Exhibits 1F-17F].)  These materials will be discussed in

detail, as necessary, below.

**C.  The Administrative Decision**

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since February 2, 2017, the alleged onset date.  (R. at 28.)  At **Step

2**, the ALJ found that Plaintiff had the following severe impairment: degenerative

disc disease of the lumbar spine status post laminectomy and discectomy.  (R. at

29.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (R. at 29-30.)  **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[2] and

determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except
> occasional climbing, stooping, kneeling, crouching, and crawling;
> frequent exposure to temperature extremes, vibration, and workplace
> hazards (unprotected heights, dangerous moving machinery, etc.);
> frequent handling and fingering with the bilateral upper extremities;
> and requires a sit/stand option at will, provided that he is not off task
> for greater than 10% of the workday.

(R. at 30-32.)  At **Step 4**, the ALJ determined that Plaintiff was able to perform

past relevant work as a bench hand.  (R. at 32-33.)  The ALJ therefore concluded,

without making a Step 5 determination, that Plaintiff had not been under a

disability, as defined in the Social Security Act, since February 2, 2017.  (R. at 33.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence

5

standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff argues that the ALJ erred by: (1) finding that his impairments do not meet or equal a listing at Step 3; and (2) improperly assessing his RFC. (ECF No. 15, PageID.541-549.) Alternatively, Plaintiff requests a Sentence Six remand to allow for the Commissioner's review of a May 15, 2019 Medical Source Statement submitted by Mark Adams, M.D., the doctor who performed his laminectomy and discectomy surgery in June 2018. (R. at 457-469 [Exhibit 17F].) The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision, and that Plaintiff is not entitled to a Sentence Six remand. (ECF No. 18, PageID.572-592.)

### 1.    The ALJ's Step 3 Determination

An ALJ must "consider all evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(a)(3) and, at Step 3 particularly, must "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(iii). Here, in finding that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the Listed impairments, ALJ LaRoche stated:

6

The severity of the claimant's physical impairments, considered singly and in combination, does not meet or medically equal the criteria of any impairment listed in 1.00 for musculoskeletal disorders, 11.00 for neurological disorders, or any impairment listed in Appendix 1, Subpart P. Regulations No. 4.  Specifically, despite the claimant's assertions, he does not meet or medically equal listing 1.04 because he lacks the requisite motor and sensory deficits, and there is no evidence of spinal arachnoiditis or spinal stenosis resulting in pseudoclaudication (10E).  For example, examination in June 2017 noted only mild tenderness to palpation of the lumbar spine, full muscle strength, intact sensation, and normal patellar tendon reflexes (8F/6).  Just two days after his June 2018 surgery, examination revealed full strength in all four extremities, normal deep tendon reflexes, no muscle wasting or edema, intact pedal pulses and cranial nerves, and negative straight leg raising (17F/2).

In addition, the undersigned notes that no medical consultant designated by the Commissioner on the issue of equivalence has concluded that a physical listing is medically equaled (1A).

(R. at 29-30.)

First, Plaintiff's general argument that the ALJ's analysis is incomplete, citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011), lacks merit.  In *Reynolds*, the Sixth Circuit suggested that an insufficient Step 3 analysis "was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary."  *Id*. at 415.  But more recent decisions, albeit also unpublished, hold otherwise.  *See, e.g., Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that any error in the ALJ's Step 3 findings "is harmless, because Forrest has not shown that his

impairments met or medically equaled in severity any listed impairment between October 2006 and July 2011"); *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (finding that the ALJ's determination was supported by evidence in the record, and thus it was unnecessary for the ALJ to make specific findings regarding a particular listed impairment).

More specifically, an ALJ's failure to articulate Step 3 findings is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled . . . ." *M.G. v. Comm'r of Soc. Sec.*, 861 F.Supp.2d 846, 861 (E.D. Mich. 2012) (Goldsmith, J., *adopting report and recommendation* of Michaelson, M.J.) (quotation marks, citation, and emphasis omitted). This is because the Sixth Circuit "has consistently rejected a heightened articulation standard, noting . . . that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Andrews v. Comm'r of Soc. Sec.*, No. 12-13111, 2013 WL 2200393, at *12 (E.D. Mich. May 20, 2013) (citing *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citation omitted)). As the *Staggs* court further explained, "[n]or is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to

step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Staggs*, 2011 WL 3444014, at *3 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings. ***… even though he did not spell out every fact a second time under the step three analysis."). Accordingly, although the ALJ's Step 3 finding here was somewhat cursory, remand is not necessary on that basis alone, as "it is well-settled that the Court may look at the rest of the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three determination." *Smukala v. Comm'r of Soc. Sec.*, No. 15-10612, 2016 WL 943953, at *10 (E.D. Mich. Feb. 23, 2016), *report and recommendation adopted*, No. 15-cv-10612, 2016 WL 931161 (E.D. Mich. Mar. 11, 2016); *Gower v. Comm'r of Soc. Sec.*, No. 13-14511, 2015 WL 163830, at *9 (E.D. Mich. Jan. 13, 2015) (holding that an ALJ does not err when his Step Three findings are supported elsewhere). *See also M.G.*, 861 F.Supp.2d at 861.

### 2. Plaintiff has failed to prove he meets every element of Listing 1.04A

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he is disabled at Step 3 of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health and*

9

*Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986).  And the abnormal physical findings must be simultaneously present for a period of at least 12 months.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation.").  Moreover, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant." *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  It is not sufficient to come close to meeting the conditions of a Listing.  *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) (Commissioner's decision affirmed when medical evidence "*almost* establishes a disability" under Listing).

Accordingly, to succeed on the instant claim of error, Plaintiff must prove that he meets every element of Listing 1.04A which provides, in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

10

Again, the ALJ focused partly on a finding that Plaintiff lacked the requisite motor and sensory deficits under Listing 1.04A, reasoning that: "[E]xamination in June 2017 noted only mild tenderness to palpation of the lumbar spine, full muscle strength, intact sensation, and normal patellar tendon reflexes (8F/6). Just two days after his June 2018 surgery, examination revealed full strength in all four extremities, normal deep tendon reflexes, no muscle wasting or edema, intact pedal pulses and cranial nerves, and negative straight leg raising (17F/2)." (R. at 29-30.) In contrast, Plaintiff asserts, with no citation to law defining each element for the Court's benefit, that substantial evidence in the record supports findings of compromise, neuroanatomic distribution of pain, limitation of motion, and positive straight-leg raising. (ECF No. 15, PageID.542-544.)

However, the Court need only focus on the positive straight-leg raising element of Listing 1.04A to determine that Plaintiff failed to meet his burden at Step 3 of proving each element of the Listing. As the Commissioner asserts, (ECF No. 18, PageID.574-575), a review of the record reveals no indication that Plaintiff's positive straight-leg raises were obtained *both sitting and supine*, like Listing 1.04A requires. 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04A; *Palaghe v. Comm'r of Soc. Sec.*, No. 15-11920, 2016 WL 1714733, at *14 (E.D. Mich. Apr. 28, 2016) ("Lack of evidence that the straight-leg test was positive in both the sitting and supine position is itself sufficient to preclude a claimant from meeting

11

Listing 1.04A.").  While Plaintiff cites to positive straight-leg tests in 2013, March 2014, and 2018, the medical records identified fail to indicate that the straight-leg tests performed were positive in both the sitting and supine positions, and at least one was positive on the left side only.  (R. at 338, 360, 407.)  And as Plaintiff bears the burden at Step 3 to prove that "all of the specified medical criteria" are satisfied, *Landsaw*, 803 F.2d at 214, the Court is under no obligation to scour the record for any additional notations of positive straight-leg tests that Plaintiff has not identified, *see Henderson v. Comm'r of Soc. Sec.*, No. 14-12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015).  It is also worth noting that Plaintiff does not make an equivalency showing or argument, or if he did, it is too undeveloped for it to warrant any analysis here.

Additionally, while Plaintiff's request for a Sentence Six remand will be discussed in much greater detail below, it bears mention here that nothing in Dr. Adams's Medical Source Statement or attached treatment notes for review of which Plaintiff seeks the remand alters the above conclusion.  In fact, the May 16, 2019 progress notes attached state, "Straight Leg raise test is negative, sitting."  (R. at 9.)

### 3.    The ALJ's RFC Determination

#### a.    RFC Determination

12

The Plaintiff bears the burden of proof at Steps 1-4, including proving his RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]"  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [he] can still do despite the physical and mental limitations resulting from [his] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Pursuant to Social Security Rule (S.S.R.) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicators must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or

an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7.  "The ALJ need not decide or discuss

uncontested issues, 'the ALJ need only articulate how the evidence in the record

supports the RFC determination, discuss the claimant's ability to perform sustained

work-related activities, and explain the resolution of any inconsistencies in the

record.'"  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002)

(citation omitted).

> **b.    The Court should conclude that claimant has not met his burden of proving entitlement to a more restrictive RFC**

Plaintiff asserts that the ALJ's RFC analysis was not supported by

substantial evidence on the basis that the ALJ did not rely on a professional

medical opinion to formulate the RFC because he rejected the opinions of a

physical therapist and of a nurse practitioner included in the record.  (ECF No. 15,

PageID.546-549.)  For the reasons that follow, I disagree.

### i.    Physical therapist

With regard to the opinion of the physical therapist, Plaintiff argues only:

"[T]he physical therapist opined that the plaintiff could not lift more than 10 lbs.,

and was unable to 'stand or walk for more than 15 minutes.' (Tr. 32).  The ALJ

14

found that the physical therapist is not an 'acceptable source' and stated that the

therapist could not 'issue a medical opinion.'" (ECF No. 15, PageID.547.) As

Plaintiff asserts, the ALJ afforded the physical therapist's opinion "little weight,"

reasoning, in part, that a physical therapist is not an acceptable medical source. (R.

at 32.) However, this conclusion in and of itself does not amount to error, nor does

she explicitly argue that it is or point to any authority to that effect. A physical

therapist is not an "acceptable medical source," 20 C.F.R. § 404.1513(a), (d),[3] so

the opinion of Plaintiff's physical therapist was not entitled to any particular

weight or deference. *See Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49

(6th Cir. 2015); 20 C.F.R. § 404.1527(f) (applying to claims filed before March 27,

2017). And Plaintiff makes no argument regarding why the ALJ should have

afforded this opinion more weight than the other evidence considered, or how

doing so would have led to a more restrictive RFC. *See McPherson v. Kelsey*, 125

F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived. It

is not sufficient for a party to mention a possible argument in the most skeletal

way, leaving the court to . . . put flesh on its bones.") (citation and internal

quotation marks omitted).

---

[3] Former 20 C.F.R. § 404.1513 was in effect until March 27, 2017. Thus, it applies
to Plaintiff's claim filed on February 2, 2017.

### ii.   Nurse Practitioner

Plaintiff's argument that the ALJ should have afforded more weight to the opinion of a nurse practitioner also fails.  The ALJ afforded "little weight" to the July 3, 2018 Medical Source Statement of a nurse practitioner in Dr. Adams's office for several reasons, including that a nurse practitioner was not an acceptable medical source under the regulations in place on the effective filing date.  (R. at 32.)  Plaintiff asserts that, "Unfortunately, the ALJ may not have noticed that the regulations [20 C.F.R. § 404.1502] changed, effective March 24, 2017[,]" prior to the hearing decision and, thus,  *"[a]cceptable medical sources now include nurse practitioners,"* so the ALJ "lacked substantial evidence to reject [this opinion], out of hand[.]"  (ECF No. 15, PageID.548 (emphasis in original).)  However, taking more careful "notice" of the regulation that Plaintiff espouses reveals that it applies only "with respect to claims *filed . . . on or after March 27, 2017.*" (emphasis added).  *See Komorowski v. Comm'r of Soc. Sec.*, No. 1:19CV1327, 2020 WL 6586011, at *8 (N.D. Ohio, July 6, 2020), *report and recommendation adopted*, 2020 WL 4390523 (N.D. Ohio July 31, 2020).  Plaintiff filed his claim on February 2, 2017.  And former 20 C.F.R. § 404.1513, which did apply, indicates that nurse practitioners are not acceptable medical sources.  And again, Plaintiff makes no argument regarding why the ALJ should have afforded this opinion more weight than the other evidence considered, or how doing so would have led to a

more restrictive RFC.  Accordingly, for the same reasons described above, the

Court should decline to find error on this basis alone.

### iii.    Resort to another medical opinion

Further, to the extent Plaintiff contends that because the ALJ assigned little

weight to the above opinions, he formulated the RFC "without resort to a

professional medical opinion" (ECF No. 15, PageID.547), that argument has been

rejected by the Sixth Circuit.  *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F.

App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a

residual functional capacity determination cannot be supported by substantial

evidence unless a physician offers an opinion consistent with that of the ALJ.")

(citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017)

(rejecting the argument that "the ALJ's RFC lacks substantial evidence because no

physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r*

*of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument

because "the ALJ is charged with the responsibility of determining the RFC based

on her evaluation of the medical and non-medical evidence").  "[T]o require the

ALJ to base [his] RFC on a physician's opinion would, in effect, confer upon the

treating source the authority to make the determination or decision about whether

an individual is under a disability . . . ."  *Rudd*, 531 F. App'x at 728 (quotation

marks and citation omitted).  As this Court has previously noted, "the social

security statute does not contemplate a bright line rule requiring the ALJ to base his or her RFC finding on a physician's opinion." *Gross v. Comm'r. of Soc. Sec.*, 247 F.Supp.3d 824, 829 (E.D. Mich. 2017) (citing *Rudd*).

### iv.    Hypothetical to the VE

Plaintiff's only substantive argument regarding additional limitations is that the "ALJ gave a flawed hypothetical to the [VE] by not incorporating [his] restrictions relative to 'bending, lifting, twisting, pushing and pulling,'" citing to his testimony that he could no longer do his job at Huron Castings because of the twisting involved, as well as notations from providers that he was limited with twisting.  (ECF No. 15, PageID.548-549 (citing R. at 51, 239, 377, 380).)  This is really a veiled attack on the RFC, since the restrictions he proposes would only need to be included in the hypothetical if included in the RFC, which they were not.  *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed"); *see also Her*, 203 F.3d at 392 ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").  In so doing, however, Plaintiff makes no reference to the evidence offered by the ALJ in support of the RFC assessment, let

18

alone any comparison between that and the twisting evidence he cites.  Nor does he

inform the Court whether twisting is needed to do the job of a bench hand, for an

employer other than Huron Castings, in addressing the ALJ's determination at Step

4 that Plaintiff was able to perform past relevant work as a bench hand either as

actually or *as generally performed*.  (R. at 33.)  *See Jordan*, 548 F.3d at 423 ("The

claimant, however, retains the burden of proving her lack of residual functional

capacity.").  The Dictionary of Occupational Titles does not include twisting

among the postural abilities needed for a bench hand.  DOT § 715.684-026, 1991

WL 679344 (2016).  Nor is twisting part of the definition of sedentary work.

*Palmer v. Berryhill*, No. 3:17 CV 1714, 2018 WL 6304349, *5 (D. Conn. Dec. 3,

2018) (*citing Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (summary

order) (acknowledging that the evidence indicated that the plaintiff could not

engage in, among other repetitive activities, repetitive twisting, and noting that the

"ALJ correctly observed, none of [those] limitations" preclude the plaintiff from

engaging in "sedentary" exertion)).  Accordingly, the Court should conclude that

Plaintiff has not met his burden of proving entitlement to a more restrictive RFC.

### 4.    Sentence Six remand

Plaintiff's final argument is that he is entitled to a Sentence Six remand for

the ALJ to consider a May 15, 2019 Medical Source Statement submitted by Dr.

Adams, as well as attached notes from a May 16, 2019 office visit and

examination.  (ECF No. 15, PageID.549-555.)  The Commissioner argues that

there is no basis for remand because the evidence is neither new nor material, and

Plaintiff has failed to demonstrate it could not have been obtained earlier.  (ECF

No. 18, PageID.585-592.)

        **a.**     **Standard**

"It is well established that the party seeking remand bears the burden of

showing that remand is proper under Section 405."  *Oliver v. Sec'y of Health and*

*Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  In a Sentence Six remand,

"[t]he district court does not affirm, modify, or reverse the Secretary's decision[,]"

and "it does not rule in any way as to the correctness of the administrative

determination."  *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  Rather,

> [T]he court remands because new evidence has come to light that was
> not available to the claimant at the time of the administrative
> proceeding and that evidence might have changed the outcome of the
> prior proceeding . . . .  The statute provides that following a sentence
> six remand, the Secretary must return to the district court to "file with
> the court any such additional or modified findings of fact and
> decision, and a transcript of the additional record and testimony upon
> which his action in modifying or affirming was based."  42 U.S.C. §
> 405(g).

*Melkonyan*, 501 U.S. at 98 (internal citation omitted).  "To obtain a sentence-six

remand, a claimant has the burden to establish that there is (1) new evidence; (2)

which is material; and (3) that there is good cause for the failure to submit it to the

ALJ."  *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013).

For the purposes of a remand under Sentence Six, evidence is new "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  A claimant satisfies his or her burden of proof as to materiality by demonstrating that "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  A claimant's condition and treatment subsequent to the date of decision is intrinsically irrelevant. *See Id.* at 712.  Rather, "the evidence must . . . relate 'to the period on or before the date of the administrative law judge hearing decision.'" *See Kerspilo v. Comm'r of Soc. Sec.*, No. 13-CV-14476, 2015 WL 1469461, at *3 (E.D. Mich. Mar. 19, 2015) (citing 20 C.F.R. § 404.970)).

Finally, a plaintiff demonstrates good cause by "giv[ing] a valid reason for his failure to obtain evidence prior to the hearing." *Oliver*, 804 F.2d at 966; *see also Foster*, 279 F.3d at 357 ("A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.").  The Sixth Circuit takes a "hard line" on the issue of good cause. *Oliver*, 804 F.2d at 966.

### b.    Analysis

21

Plaintiff submitted to the Appeals Council the Medical Source Statement and examination notes at issue approximately seven months after the ALJ issued his disability decision.  (R. at 8-17.)  The Appeals Council rejected the additional evidence, stating:

> You submitted treatment notes from Mark Adams, M.D. dated May 16, 2019 (3 pages) and Medical Source Statement from Mark Adams, M.D. dated May 15, 2019 (7 pages).  The Administrative Law Judge decided your case through October 18, 2018.  This additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before October 18, 2018.
>
> If you want us to consider whether you were disabled after October 18, 2018, you need to apply again.

(R. at 2.)

The Undersigned questions why the Commissioner has challenged the newness of the evidence just because Plaintiff *could have*, potentially, obtained it earlier.  (ECF No. 18, PageID.585-586.)  The treatment notes and Medical Source Statement are undoubtedly new, as Plaintiff's examination occurred on May 16, 2019, and Dr. Adams, despite stating that he had a treatment relationship with Plaintiff beginning in December 2017 (R. at 16), did not complete the Medical Source Statement until May 15, 2019.  (R. at 8-17.)

However, the Court should be skeptical of Plaintiff's assertion that good cause existed for failing to acquire and obtain the evidence earlier because "[a] reasonable amount of time needed to pass, post-surgery, in order for plaintiff's

doctor to be able to opine as to more permanent physical limitations, tested by more time, than what was opined in the first MSS submitted to the Commissioner, dated July 3, 2018 (less than a month after surgery)."  (ECF No. 15, PageID.553.) It is true that Plaintiff's laminectomy and discectomy surgery occurred just prior to his hearing before the ALJ, so a Medical Source Statement from that time period may not have painted an accurate picture of Plaintiff's condition post-surgery.  But the examination notes and Medical Source Statement at issue, although submitted to the ALJ about seven months after the October 2018 hearing decision, are from almost *one year* after Plaintiff's June 2018 laminectomy and discectomy surgery.

Nonetheless, even assuming without deciding that Plaintiff has demonstrated good cause for failing to acquire this evidence earlier, the Court should find that Plaintiff has failed to satisfy his burden of proof as to materiality, because that large gap in time demonstrates that the evidence does not relate to the time period on or before the date of the ALJ hearing decision.  *Kerspilo*, 2015 WL 1469461, at *3.  The treatment notes state that the examination occurred not as a follow-up to Plaintiff's June 2018 surgery, but as a follow-up to an EMG performed on May 2, 2019 (R. at 8), and represent a snapshot in time seven months after the ALJ issued his hearing decision.  And although Dr. Adams references symptoms and findings from Plaintiff's "prior office visit notes" in his Medical Source Statement and includes a prognosis of "unable to determine at this time" (R. at 11-12), there is no

indication that the limitations opined therein existed at the time of the hearing decision. In fact, in response to the prompt asking the earliest date that the description of "symptoms and limitations in this questionnaire" applies, Dr. Adams listed <u>March 11, 2019</u>, immediately followed by the words "permanent disability noted…." (R. at 16.)[4]

### F.    Conclusion

Plaintiff has the burden of proof on statements of error. *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 15), **GRANT** Defendant's motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

---

[4] It may actually read, "noted at this visit[,]" but the handwriting is less than crystal clear.

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 8, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE